THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-166-BR

PNHC, LLC,

        Plaintiff,

v.

                                       ORDER

GANJA, LLC, d/b/a HYDRO Las
Vegas, MITCHELL HOSTMEYER, and
JAMES GREENWOOD,

        Defendants.

This matter is before the court on Ganja, LLC ("Ganja"), Mitch Hostmeyer ("Hostmeyer"), and James Greenwood's ("Greenwood") (collectively "defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), (DE # 12), to which PNHC, LLC ("plaintiff") filed a response, (DE # 16). Also before the court is defendants' motion "to compel arbitration and to dismiss this action under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure." (DE # 14.) Plaintiff filed a response in opposition to this motion as well. (DE # 17.) Both motions are ripe for disposition.

## I. BACKGROUND

In February and March of 2020, plaintiff reached an agreement with Quick Aid, LLC, a company located in Clearwater, Florida, pursuant to which Quick Aid would have the right of first refusal on hand sanitizer acquired by plaintiff. (Compl., DE # 1, at 3.) Thereafter, "Marcia Hager, a business agent/broker operating as CILI By Design in Las Vegas, Nevada, communicated with PNHC representatives that she had manufacturers available to produce bulk quantities of hand sanitizer. Ms. Hager identified Ganja, LLC . . . as the manufacturer." (Id. at 4.) Hager, Hostmeyer, and Greenwood then participated in negotiations with plaintiff "for the

production of four million eight-ounce bottles of hand sanitizer to be produced by Ganja and to be delivered to PNHC, or to PNHC's customer, which in this agreement was Quick Aid." (Id.) On 24 March 2020, Hager sent plaintiff proposed terms for the manufacturing contract by email. (Id.) That same day, "[plaintiffs'] representatives spoke by telephone conference with Ms. Hager, James Greenwood of Ganja, and others and confirmed the terms of the contract as written in Ms. Hager's March 24, 2020 email." (Id. at 5.) On 25 March 2020, plaintiff's representative requested an invoice for the initial deposit to begin manufacture. (Id. at 5–6.) Plaintiff then completed a wire transfer to Ganja for $362,500.00, the initial deposit, that same day. (Id. at 6.)

On 26 March 2020, Hager informed plaintiff that the agreed upon price did not include production and application of private labels for the bottles. (Id.) Plaintiff asserts this "amounted to a material change in terms of the contract, or a rejection of the first offer to contract and the offer of a new contract." (Id. at 7.) Thus, plaintiff requested the return of its deposit. (Id.) Defendants refused to return the deposit unless plaintiff secured a replacement buyer for the sanitizer. (Id. at 8.) On 21 April 2020, plaintiff filed this suit alleging breach of contract, conversion, unjust enrichment, fraud in the inducement, tortious interference with contract, and unfair and deceptive trade practices.

## II. DISCUSSION

Defendants first contend this court lacks personal jurisdiction over them pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. (Mem. Supp., DE # 13, at 3–4.) They contend "[n]one of the three [d]efendants have sufficient direct contacts with North Carolina for this court to assert personal jurisdiction." (Id. at 4.) In response, plaintiff asserts "[d]efendants had extensive contacts with PNHC, a North Carolina company, with Justin Ortiz, a North Carolina citizen and managing member of PNHC, and other representatives of PNHC." (Resp. Opp'n, DE

2

Case 5:20-cv-00166-BR   Document 28   Filed 03/15/21   Page 2 of 9

# 16, at 10; see also Ortiz Aff., DE # 16-1, at 2–3.) Plaintiff contends "[t]he facts in the Ortiz [a]ffidavit and in the [v]erified [c]omplaint establish that [d]efendants actively engaged in business dealings with a North Carolina company and its representatives . . . ." (Id. at 11.)

Once a defendant properly challenges personal jurisdiction, the plaintiff bears the burden of establishing a ground for jurisdiction by a preponderance of the evidence. Taylor v. Bettis, 976 F. Supp. 2d 721, 748 (E.D.N.C. 2013) (quoting Combs v. Baker, 886 F.2d 673, 676 (4th Cir. 1989)). "When considering a jurisdictional challenge, the court 'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" Id. (quoting Combs, 886 F.2d at 676).

Personal "jurisdiction must be authorized by the long-arm statute of the forum state, and . . . must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001) (citation omitted). North Carolina's long-arm statute extends jurisdiction over nonresident defendants to the full extent permitted by the Fourteenth Amendment. Taylor, 976 F. Supp. 2d at 748 (quoting ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997)). Thus, these two requirements "collapse into a single inquiry as to whether the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''" Christian Sci. Bd., 259 F.3d at 215 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)).

Personal jurisdiction may be either general or specific. Cherry Tree Farms, LLC v. Runyan, No. 2:16-CV-60-D, 2016 U.S. Dist. LEXIS 176501, at *6 (E.D.N.C. Dec. 21, 2016). A court may exercise general jurisdiction over a nonresident defendant if that party "maintains

'continuous and systematic' contacts" with the forum state. Taylor, 976 F. Supp. 2d at 748 (citation omitted). Absent "continuous and systematic" contacts, "a court may assert [specific] jurisdiction only if the litigation arises out of the defendant's contacts with the form state." Id. (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408 (1984)). In considering whether the court has specific jurisdiction, courts consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 302 (4th Cir. 2012) (citation omitted).

A court may exercise specific jurisdiction only if the cause of action arises from a defendant's purposeful contacts with the forum state. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum [s]tate and is therefore subject to the [s]tate's regulation.'" Bristol-Myers Squibb Co. v. Superior Court, 137 S. Ct. 1773, 1780 (2017) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). "[T]his purposeful requirement helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum." Synergy Inv. Group, LLC v. Isenberg, No. 3:08-CV-424-C, 2009 U.S. Dist. LEXIS 1094, at *9 (W.D.N.C. Jan. 8, 2009) (citation omitted). Thus, the court must evaluate whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." Downs Constr. Co., LLC v. Interbuild, Inc., No. 1:19-CV-889, 2020 U.S. Dist. LEXIS 54795, at *6 (M.D.N.C. March 30, 2020) (quoting Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 560 (4th Cir. 2014)).

"For a [s]tate to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Fields v. Sickle Cell Disease Ass'n of Am., Inc., 376 F. Supp. 3d 647, 651 (E.D.N.C. 2018) (quoting Walden v. Fiore, 571 U.S. 277, 284 (2014)). In evaluating the connection between the defendant and the forum state, in the business context, the court may consider:

> (1) whether the defendant maintains offices or agents in the forum State; (2) whether the defendant owns property in the forum State; (3) whether the defendant reached into the forum State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum State; (5) whether [a choice of law clause selects the law of the State]; (6) whether the defendant made in-person contact with [a] resident of [the State] in [the State] regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum.

Downs Constr., 2020 U.S. Dist. LEXIS 54795, at *6–7 (quoting Universal Leather, 773 F.3d at 560); see also Charter Med., Ltd. V. Zigmed, Inc., 617 S.E.2d 352, 355 (N.C. Ct. App. 2005) (noting the court typically evaluates the quantity, quality, nature, and source of the contacts, in addition to the interest in the forum state and convenience of the parties).

Here, plaintiff does not assert that defendants maintain offices or agents in North Carolina, own property here, or made in-person contact with a resident regarding the contract at issue. (See Ortiz Aff., DE # 16-1, at 1–2 (stating Ganja is a Nevada company and describing phone and email communications with its representatives).) Plaintiff does not assert that defendants engaged in long-term business activities here,[1] that the contract at issue contained a choice of law clause selecting North Carolina, or that defendants were to manufacture the materials in North Carolina. Rather, it contends (and defendants deny) defendants solicited the formation of a contract with plaintiff, a North Carolina resident, through its purported agent,

---

[1] Plaintiff alleges "[a]t all times relevant to this action, Ganja has done business in Wake County, North Carolina, among other locations." (Compl., DE # 1, at 2.)

Hager. (Ortiz Aff., DE # 16-1, at 2.) Plaintiff also contends defendants communicated with its representative, a North Carolina resident, about the formation of that contract, and accepted payment wired from North Carolina. (Id.) Thus, plaintiff relies on the single contract at issue here to establish specific personal jurisdiction.

Plaintiff cites Tom Togs, Inc. v. Ben Elias Indus. Corp. for the proposition that a single contract may form the basis for personal jurisdiction. (Id. at 8.) However, as acknowledged in Tom Togs, a single contract with a North Carolina resident *may* be an adequate basis for jurisdiction *if* the contract has a substantial connection with this state. 348 S.E.2d 782, 786 (N.C. 1986); see also Charter Med., 617 S.E.2d at 355. Thus, "only the rare contract will, by itself, be significant enough to establish the minimum contacts needed for personal jurisdiction." Downs Constr., 2020 U.S. Dist. LEXIS 54795, at *8 (citing Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 190–91 (4th Cir. 2016)). A contract may have a substantial connection with the state where "the defendant deliberately has engaged in significant activities within [the] State, or has created continuing obligations between itself and residents of the forum." Id. (quoting Perdue Foods, 814 F.3d at 190). "However, to serve as a basis for personal jurisdiction 'the continuing obligations' underlying the contract must 'strengthen a defendant's contacts with the plaintiff's forum.'" Fields, 376 F. Supp. 3d at 651–52 (quoting Perdue Foods, 814 F.3d at 191). Thus, "the mere act of entering a contract with a forum resident does not provide the necessary contacts when all elements of the defendant's performance are to occur outside the forum." Charter Med., 617 S.E.2d at 355 (citation omitted). "Moreover, '[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'" Fields, 376 F. Supp. 3d at 652 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).

6

In Tom Togs, the court found personal jurisdiction where the parties formed a contract in North Carolina for manufactured shirts. 348 S.E.2d at 786–87. There, in addition to forming the contract in North Carolina, defendant was informed the shirts would be cut in North Carolina and agreed to send labels for the shirts to North Carolina. Id. at 787. The shirts were ultimately manufactured in North Carolina, shipped from North Carolina, and returned to the state when defendants were dissatisfied with them. Id. Thus, the court concluded the contract "had a 'substantial connection' with this State." Id.; see also Beem USA Limited-Liability Ltd. P'ship v. Grax Consulting, LLC, 838 S.E.2d 158, 164 (N.C. 2020) (finding personal jurisdiction where defendant's representative travelled to North Carolina to open a bank account for the plaintiff partnership, used that bank account on behalf of the partnership, contacted a North Carolina resident multiple times per month, and travelled to the state on three occasions for business pertaining to the partnership); Synergy, 2009 U.S. Dist. LEXIS 1094, at *9 (finding personal jurisdiction where respondent entered a contract with a North Carolina company that contained an arbitration clause stating arbitration would be conducted in North Carolina).

In Downs Construction, more analogous to the facts at issue here, the parties "formed a single contract of definite duration by which [p]laintiff would construct a building for [d]efendant in Virginia" and "exchanged approximately seven phone calls and twenty-three emails while negotiating their contract." 2020 U.S. Dist. LEXIS 54795, at *8–9. The court found "[d]efendant did reach into North Carolina to initiate this contract and did exchange a handful of calls and emails with [p]laintiff . . . ; however, the contract that arose from these contacts did not establish a significant or long-term connection between [d]efendant and North Carolina." Id. at 10. Thus, the court held it lacked personal jurisdiction over the defendant. Id.; see also Fields, 376 F. Supp. 3d at 652–53 (finding no jurisdiction where "the alleged activity in

7

North Carolina [was] properly characterized as unilateral activity by the plaintiff, rather than acts by the defendant made with the intent to reach North Carolina").

Here, the parties allegedly formed a single contract of definite duration, under which defendants would manufacture hand sanitizer and deliver it to "PNHC, or to PNHC's customer, which in this agreement was Quick Aid," a Florida entity. (Compl., DE # 1, at 4.) Defendants were not planning to, nor did they, manufacture the sanitizer in this state or ultimately ship it to this state. (See Compl., DE # 1, at 10.) Even assuming defendants initiated the contract and accepting plaintiff's contention that defendants engaged in discussions with plaintiff regarding the contract's formation and ultimate alleged breach, it cannot be said that the contract itself established a significant or long-term connection between defendants and North Carolina. Additionally, while the validity of such clause is contested, the parties agree that Hager sent plaintiff a document which contained a choice of law clause selecting Nevada as the location to resolve disputes. (See Hostmeyer Aff., DE # 12-1, at 2; Ortiz Aff., DE # 16-1, at 2 (noting Hager sent the document to plaintiff's representative, but contending he did not agree to the terms thereof).) This further suggests defendants had no intention of subjecting themselves to the laws of this state. As such, and in light of their limited contacts with the state—particularly before the alleged breach—defendants lacked a reasonable expectation of being haled into court here and this court lacks personal jurisdiction over them.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss, (DE # 12), is GRANTED. This case is DISMISSED WITHOUT PREJUDICE. Defendants' motion to stay and compel

8

Case 5:20-cv-00166-BR   Document 28   Filed 03/15/21   Page 8 of 9

arbitration, (DE # 14), is DENIED as moot.  The Clerk is DIRECTED to close this case.

This 15 March 2021.

_____
W. Earl Britt
Senior U.S. District Judge